(114 App. Div. 470.)

### McCARRAGHER v. PROAL.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE—ACTION—INSTRUCTIONS.

In an action for injuries to plaintiff in a collision between his bicycle and an automobile at a street intersection, it appeared that plaintiff had been traveling westerly and defendant northerly. An ordinance was introduced in evidence giving the right of way at street intersections to vehicles traveling northerly over vehicles traveling westerly, and the court instructed that a violation of the ordinance would not be conclusive evidence of negligence, but merely evidence to be considered on the question of negligence. *Held*, that a subsequent instruction, stating that the jury should determine whether the ordinance applied to the case in question, was erroneous.

2. SAME—VIOLATION OF ORDINANCE—CONTRIBUTORY NEGLIGENCE.

The mere fact that one operating a vehicle violates a municipal ordinance prescribing the rights of way at street intersections does not, of itself, constitute contributory negligence.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1517.]

3. SAME—EVIDENCE.

In an action for injuries to plaintiff in a collision between his bicycle and an automobile evidence considered, and *held* insufficient to show plaintiff free from contributory negligence.

O'Brien, P. J., and Houghton, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Charles McCarragher, by Anna F. McCarragher, his guardian ad litem, against Arthur B. Proal. From a judgment in

favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Carl S. Petrasch (Louis Salant, on the brief), for appellant.

James R. Soley (Howard C. Dickinson, on the brief), for respondent.

LAUGHLIN, J. This is an action for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant. At about 10:30 o'clock in the forenoon on the 17th day of April, 1903, the plaintiff, then 18 years of age, was riding a bicycle westerly on East Forty-Fourth street, from No. 47, which was about 112 feet east of Madison avenue, intending to continue along Forty-Fourth street across Madison avenue to Fifth avenue on his way to No. 905 Fifth avenue, where he was employed by Whitehouse & Parlee, real estate agents. He testifies that while he was crossing Madison avenue the left front wheel of the defendant's automobile came in contact with his left leg from the side and rear, precipitating him upon the pavement, and inflicting the injuries of which he complains. The plaintiff was continuing on his course, and did not discover the automobile until it struck him. He testified that his course was along the northerly side of the single car track in Forty-Fourth street, within from 6 to 10 feet of the north curb; that his speed was moderate; that when within 3 or 4 feet of the building line of Madison avenue he had a clear view down the avenue, and looked, and saw a covered van approaching a little north of the middle of the block; that no other vehicle was in sight in that direction; that he looked north, and saw an automobile and street car approaching a little south of Forty-Fifth street; that he then rang his bell, and "spurted" straight across, without again looking in either direction, and that as his front wheel crossed the westerly rail of the south-bound track he heard a shout, and the automobile, which had not sounded the gong or rung a bell, hit him. The chauffeur testified that the automobile was an electric brougham with extension front, weighing 4,400 pounds, and having a maximum capacity for speed of 10 or 11 miles an hour; that he was running at third speed, or about 7 miles an hour; that his seat was about 6 feet above the pavement, and that his head was nearly 3 feet higher; that his course up the block was on the east side of the street, 2 or 3 feet easterly from the easterly rail of the north-bound street railroad track; that when about 20 feet from Forty-Fourth street he for the first time saw the plaintiff about 12 feet east of the east curb line of Madison avenue, and that he had not looked in that direction before; that plaintiff was riding on the south side of Forty-Fourth street, about 5 or 6 feet from the southerly curb, and that, after the automobile passed about 10 feet further on, it appeared to him that a collision was imminent, and he turned off the power, applied the brake, sounded the gong, shouted, and turned his machine quickly to the left side, with a view to allowing the plaintiff to pass to the right, but that the plaintiff continued on his course, and the collision occurred in the middle of the easterly track,

100 N.Y.S.—14

just north of the middle of Forty-Fourth street, and the automobile came to a stop before it reached the westerly track.

There is no substantial conflict in the evidence as to the course pursued by the automobile. The testimony of the other witnesses called by the defendant, however, tends to show that the plaintiff's course was about along the center line of Forty-Fourth street; that the point of collision was about between the two tracks, and at about the center, or a little north of the center, of Forty-Fourth street, and that it moved only 3 or 4 feet after the collision. The other witnesses called by the plaintiff testified, in substance, that he was riding north of the center line of Forty-Fourth street; that the collision occurred on the south-bound track, or just west of the westerly rail thereof; that as the automobile reached Forty-Fourth street it swerved suddenly to the left, and at the time of the collision was faced in a westerly or northwesterly direction; that the plaintiff was knocked off the wheel to the right, and was shoved along the asphalt by the automobile from 6 to 8 feet toward the northwest corner of the street; that when the automobile came to a stop, the rear wheels were on the south-bound track, and the front wheels on the asphalt to the west. No witness, excepting the plaintiff, testified to seeing the moving van. The carriageway of East Forty-Fourth street between the curbs is 30 feet wide, and that of Madison avenue is 42 feet wide. The easterly curb line of Madison avenue is 23 feet from the building line. The easterly rail of the north-bound street railway track is 13 feet 6 inches from the easterly curb. The block between Forty-Third and Forty-Fourth streets is 200 feet long. The block bounded by Forty-Fourth street, Vanderbilt, Forty-Third street, and Madison avenue was then vacant, and inclosed by a picket fence 5 feet 9 inches in height. This fence along Madison avenue was 8 feet 2 inches west of the building line. The pickets were 3 inches wide, and spaced 2¾ inches apart, and were pointed at the top. The fence partly obstructed the view from Forty-Fourth street down Madison avenue and vice versa, unless, of course, the line of vision was above it. The evidence does not show that the chauffeur attempted to look through or over the picket fence into West Forty-Fourth street, nor does it show that the plaintiff attempted to look through or over it into Madison avenue.

Testimony was given by witnesses called by the defendant tending to show that the plaintiff was riding at a speed of about 8 miles an hour, and the chauffeur testified on that subject "the boy was going as fast as I was, probably faster." With the exception of the testimony of the chauffeur, there is no specific evidence of the relative distance of the bicycle and automobile as they approached the crossing, from the point where their routes would have intersected, had they continued on their respective courses. One witness called by the defendant, who was a passenger on a south-bound street car, seated on the rear platform seat facing north, testified that the street car passed the automobile about one-third of the length of the block below Forty-Fourth street; that just after passing it, and when the street car was about in the middle of the block, he looked through the picket fence, and saw the plaintiff about 15 feet east of the easterly fence line of Forty-Fourth street, and, apprehending an accident, he alighted from

the car, and went back and heard the plaintiff say, in answer to an inquiry from a policeman as to whether he wanted the chauffeur arrested, "No; it was not his fault." This witness does not locate the position of the automobile at the time he first saw plaintiff. The plaintiff admits that he answered the policeman's inquiry in the negative, but he denies that he stated that the chauffeur was not at fault.

Evidence was adduced on the part of the plaintiff tending to show that the automobile could have been stopped in from 12 to 15 feet, and that the bicycle could have been stopped in about the same distance; and on the part of the defendant evidence was introduced tending to show that the bicycle could have been stopped in 2 or 3 feet, and that it would take from 15 to 24 feet to stop the automobile. If the chauffeur is accurate in his testimony with respect to the distances, his machine had 25 or 26 feet to travel after he first saw the plaintiff before it would reach the line on which the plaintiff was proceeding, and the plaintiff had only 22½ or 23½ feet to travel to clear the automobile; and if the plaintiff was not traveling on the southerly side of Forty-Fourth street, but on the northerly side, the relative distances would be still greater in his favor of the plaintiff. It would manifestly, however, be an unfair view of the testimony of the chauffeur to seize upon these figures as indicating that if he had kept on his course the accident would have been avoided, for he further testifies that if he had kept on his course he would have run over the plaintiff. It is evident that this was his opinion at the time, and for that reason he turned to the left. With the two vehicles so near, it is reasonable to infer that his testimony that a collision would have been unavoidable if he had not turned is more likely to be accurate than his estimate of distances given in feet. The fact that the automobile, although slowing up, struck the bicycle, is evidence that the chauffeur's judgment that he would have struck the plaintiff if he had continued on his course was more accurate than his estimate of distances or of speed. Of course, the automobile may have been going much faster than the chauffeur admits, and if it shoved plaintiff from 6 to 8 feet that would indicate that it had not slowed down materially; but there was evidence from which the jury might have found that, as the vehicles approached the point of crossing, if they continued on their respective courses, and at the speed at which they were respectively approaching, a collision would have occurred. In these circumstances, it was the duty of the court to fully instruct the jury with respect to the rights and duties of the respective parties.

In behalf of the defendant, an ordinance duly enacted by the legislative body of the municipality, giving "the right of way" at street intersections to vehicles traveling northerly and southerly over vehicles traveling easterly and westerly, was introduced in evidence. The court, in the main charge, neither defined negligence nor referred to the ordinance. The court subsequently, at the request of counsel for the defendant, instructed the jury as follows:

"It is the duty of both these parties to exercise ordinary care. Negligence is the want of ordinary care, prudence, or caution by one performing an act, having no positive intention of injuring the person complaining thereof, and ordinary care is such care as is fairly apportioned to the risk to be incurred

or the danger to be avoided, based upon the ordinary standard of prudence and caution. There is evidence in this case that you must consider—this evidence of the ordinance that has been adduced—which gives the right of way to vehicles passing north and south over those going east and west; but you must not glean, if you conclude from the facts that there has been a violation of this ordinance, that that is conclusive evidence of negligence; but it is a fact for you to consider that the evidence does give this right of way."

Counsel for the plaintiff thereafter requested the court to instruct the jury as follows:

"I would like to ask your honor to charge in reference to the ordinance that the jury may consider whether the circumstances were such as to call for the application of this ordinance."

The court replied:

"Certainly; take all the evidence into consideration, and you are to determine whether from the evidence in this case the proof offered as the ordinance in the shape of an ordinance applies to this particular case."

—To which counsel for the defendant duly excepted. Counsel for the defendant then requested the court to charge as follows:

"I ask your honor to charge the jury, in view of the charge just made, that the ordinance provides that if a vehicle in the city of New York is going north or south, and if another vehicle is going east or west, and they come near to each other at a street intersection, and there is any imminence of a collision, the vehicle east and west must wait, and let the vehicle going north and south pass."

Whereupon the court said: "Except as I have charged in regard to the ordinance, I refuse to charge that."

I am of opinion that these exceptions were well taken. It will be observed that the court at first properly instructed the jury that they were to consider the ordinance, but that a violaion of it would not be conclusive evidence of negligence, and would be merely evidence to be considered by them upon the question of negligence. The instructions subsequently given at the request of counsel for the plaintiff were misleading. The court left it to the jury to determine as to whether the ordinance was applicable. The learned judge doubtless merely meant to leave it to the jury to determine whether the ordinance had been violated, but it is doubtful whether the jury so understood the charge as made. The automobile was going north on an avenue, and the bicycle was going west on a cross street. It is evident, therefore, that the ordinance was applicable, for its very purpose was to regulate the rights of vehicles thus crossing; but whether the ordinance was violated or not depended upon how the jury found the facts. After it was left to the jury in this indefinite way to determine whether or not the ordinance applied, the object of the request of counsel for the defendant, which was declined, was to have the jury instructed by the court as to what facts would constitute a violation of the ordinance. The most casual observation of the congestion of vehicle traffic on the avenues and streets running northerly and southerly shows the necessity for such an ordinance. There are but few streets, especially uptown, where there is any congestion in vehicle traffic moving easterly and westerly. Were it not for this ordinance, not only would multi-

tudes of people be delayed at times for the convenience of one, but great danger would be involved in suddenly stopping the procession of vehicles up and down the avenues, excepting at points where the traffic is regulated by the police. If the bicycle and automobile were approaching the point at which their lines of travel would intersect substantially at the same time and so near that there was imminence of a collision, and it was not the duty of the bicycle rider to slow down and stop if necessary to avoid a collision, it is difficult to see the object of the ordinance, and to know what would constitute a violation of it. If the facts were as recited in the request to charge, I think the plaintiff in going ahead did not accord to the defendant the right of way, and, if so, he was guilty of a violation of the ordinance, and that should have been considered by the jury with the other evidence tending to show contributory negligence on his part. The validity of this ordinance and of similar ordinances and statutes has been sustained by the courts, and it has been held that the rights of the traveler to whom the right of way is given are superior. Geary v. Met. St. R. Co., 84 App. Div. 514, 82 N. Y. Supp. 1016; City of New York v. Met. St. R. Co., 90 App. Div. 66, 85 N. Y. Supp. 693; Cushing v. Met. St. R. Co., 92 App. Div. 510, 87 N. Y. Supp. 314; Buys v. Third Ave. R. R. Co., 45 App. Div. 11, 61 N. Y. Supp. 113. Of course, the rule is well settled that a violation of a statute or municipal ordinance by those operating a train, car, or vehicle does not, in and of itself, constitute negligence. Knupple v. Knickerbocker Ice Company, 84 N. Y. 485. The jury must determine from all the circumstances, including the fact of the violation of the statute or municipal ordinance, whether the party violating it was guilty of contributory negligence. On the other hand, while third persons have a right to assume that statutes and ordinances will be observed, that does not relieve them of exercising care and caution for their own safety; and when they observe, or in the exercise of ordinary care should observe, that the statute is not being obeyed, they are not justified in proceeding and asserting their rights, and, if they do, they cannot recover any damages they may sustain. Taylor v. Union Traction Co., 184 Pa. 465, 40 Atl. 159, 47 L. R. A. 289; C. & A. R. R. R. v. R. R. I. & St. L. R. R., 72 Ill. 34.

Aside from the error in the charge, I am of opinion that the verdict of the jury is against the weight of the evidence. The plaintiff did not satisfactorily bear the burden of showing by a preponderance of evidence that he was free from negligence. He concedes that he only looked once, and that was when he was three or four feet east of Madison avenue. If he then had a clear view, as he claims, it is quite evident that he did not look with care, or he would have seen the automobile; and if when he looked he did not have a clear view of the street for a sufficient distance to discover the approach of vehicles from which injury might be apprehended, he should have looked after emerging beyond the street line. It does not appear that his attention was diverted. The street car and other vehicle approaching from the north were concededly a considerable distance away. If he had exercised ordinary care for his own safety it would seem that he would or should have discovered this automobile before it struck him, and in time to veer a little to the right, and aid the chauffeur if the latter

was making an effort to avoid running him down, and, in any event, to avoid the collision.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN and CLARKE, JJ., concur.

HOUGHTON, J. I do not think the judgment should be reversed on the ground that the verdict was against the weight of evidence. The negligence of the defendant's servant was clearly for the jury. His chauffeur repeats many times that he was 20 feet south of the south curb of Forty-Fourth street when he first discovered the plaintiff on his bicycle 12 feet east of the Madison avenue line, on the south side of that street. He does not say that the plaintiff was close to the curb, and presumably he was not riding on the curb line. The plaintiff testifies that he was riding on the north side of that street. The defendant's proof is that the automobile could be stopped within 24 feet. The weight of the evidence is that the accident occurred on the downtown car track on Madison avenue, or further west, and north of the center line of Forty-Fourth street, and that the left fore wheel of the automobile hit the hind wheel of the bicycle on the left side and from the rear. The accident could have been avoided, as it turned out, had the chauffeur kept straight ahead, or had he turned sharply around the southwest corner of Forty-Fourth street, instead of going to the north side of Forty-Fourth street to make his turn. Instead of stopping within 24 feet, in which it could have been stopped, according to the defendant's own proof, it proceeded before stopping 20 feet to the southerly curb of Forty-Fourth street, and from that point diagonally to the westerly side of Madison avenue and Forty-Fourth street, which must have been a distance of at least 20 feet more.

While the defendant would not be liable for an error in judgment, it was a question for the jury whether or not the chauffeur exercised proper care in doing what he did, and in not stopping sooner than he did; nor should the verdict be disturbed with respect to any negligence on the part of plaintiff. By his testimony, when he approached Madison avenue he looked south, and saw nothing but a van between his street and Forty-Third street, and that looking north he saw a car and an automobile coming southerly from Forty-Fifth street. It is true he is not corroborated as to the van, but the jury had a right to believe his testimony, and he fulfilled his duty in looking, if his testimony is true. The chauffeur testifies that he turned to the left to give the plaintiff an opportunity to turn to the right. When he saw that the plaintiff was not turning to the right, but was proceeding straight across Madison avenue, he himself could have turned more sharply to the left, or turned back to the right and kept straight ahead, and if he had done either the accident would have been avoided. The plaintiff did not turn to the right because, as he says, he did not see the automobile at all until it came on him from behind. Upon the testimony it was a fair question for the jury to determine whether or not the chauffeur and the plaintiff exercised the care which each was

required to exercise under the circumstances, and I think on the facts the judgment should not be disturbed.

I concur, however, in the granting of a new trial because of the errors in refusing to charge.

O'BRIEN, P. J., concurs.