# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## State of New York.

BOSTON INSURANCE COMPANY, Appellant, *v.* BROOKLYN HEIGHTS RAILROAD COMPANY, Respondent.

First Department, February 21, 1918.

**Street railroads — municipal ordinance as to right of way of vehicles at street intersection construed — collision between automobile and trolley car — instructions to jury as to right of way.**

Under an ordinance of the city of New York providing that vehicles going in a northerly or southerly direction shall have the right of way over any vehicle going in an easterly or westerly direction, it is the duty of the driver of an automobile proceeding in an easterly direction to allow a trolley car proceeding in a northerly direction an opportunity to pass, if the latter was likely to reach the intersection at the same time as the automobile.

In an action for damages arising from a collision between an automobile proceeding in an easterly direction and a trolley car proceeding in a northerly direction, the court refused to charge plaintiff's request that if the front of the automobile was from twenty to twenty-five feet from the railroad track at the time when the street car was from one-half to three-quarters of a block away, the trolley car did not have the right of way, and further refused to charge that if the automobile got within the square formed by the intersection of the streets before the trolley car, that at that point the trolley car would not have, as matter of law, the right of way. *Held*, that if such were the facts as the jury might have found, it could not be said as a matter of law that the trolley car had the right of way, but that would be a question of fact depending

on the speed at which the respective vehicles were approaching, and the court instead of declining the request should have instructed the jury that whether the trolley car did then have the right of way depended on whether or not if the vehicles proceeded without changing their speed, the trolley car would have reached the path of the automobile before that vehicle would have cleared the street car track.

The jury having specifically asked who had the right of way if they found that the automobile reached a point within thirty feet of the track when the trolley car was one hundred and twenty-five feet away, the court should have answered that it could not be said as matter of law which of the vehicles had the right of way, and that it was a question for the jury, depending upon how they found the facts with respect to the speed of the respective vehicles, and it was reversible error for the court to answer that under the ordinance the trolley car had the right of way over the automobile.

SHEARN, J., and CLARKE, P. J., dissented in part, with opinion.

APPEAL by the plaintiff, Boston Insurance Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 13th day of June, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 10th day of July, 1917, denying plaintiff's motion for a new trial made upon the minutes.

*Horace L. Cheyney* of counsel [*Ward D. Williams*, attorney], for the appellant.

*Harold L. Warner* of counsel [*George D. Yeomans*, attorney], for the respondent.

LAUGHLIN, J.:

I fully agree with the views expressed by Mr. Justice SHEARN with respect to the construction and effect, in an action for damages arising from a collision between vehicles one of which is traversing a street or avenue in a northerly or southerly direction and the other of which is traversing an intersecting street, of the ordinance* giving the right of way to vehicles going northerly or southerly, but I am unable to concur in his construction of the written charge transmitted to the jury in answer to their written inquiry made to the

---

* See Code Ord. (1915), chap. 24, art. 2, § 15, subd. 1; Cosby's Code Ord. (Anno. 1915), p. 336.— [REP.

court for advice as to which of the parties on the facts stated in their inquiry had the right of way at the crossing. The inquiry made by the jury and the written charge returned by the court thereto are to be construed in the light of the proceedings on the trial and particularly in the light of the instructions given by the court with respect to the effect of the ordinance giving the right of way to vehicles traveling northerly or southerly over vehicles traveling easterly or westerly and in the light of the rulings made by the trial court with respect to the requests to charge made by counsel for the plaintiff. Mr. Justice SHEARN in his opinion states one of these requests which was denied but he omits another which followed and was likewise denied and which I think is material. After the court refused to charge plaintiff's request that if the front of the automobile was from twenty to twenty-five feet from the railroad track at the time when the street car was from half to three-quarters of a block away the trolley car did not have the right of way, the court was requested by counsel for plaintiff to instruct the jury that if the automobile " got within the square formed by the intersection of Sixteenth Avenue and 45th Street before the trolley car, that at that point the trolley car would not have, as matter of law, the right of way." If those were the facts, and the jury might well have so found on the evidence, I think it could not be said as matter of law that the trolley car had the right of way but that would be a question of fact for the jury depending on the speed at which the respective vehicles were approaching, and the court instead of declining the request should, at least, have instructed the jury that whether the trolley car did then have the right of way depended on whether or not, if the vehicles proceeded without changing their speed, the trolley car would have reached the path of the automobile before that vehicle would have cleared the street car track. The failure of the court to enlighten the jury on this assumed state of facts which they might have found evidently gave the jury considerable trouble in determining the issues and resulted in their sending the written inquiry to the court which is set forth in Mr. Justice SHEARN's opinion. It is evident that what the jury wished to know was who had the right of way if they found

that the automobile reached a point within thirty feet of the track when the trolley car was one hundred and twenty-five feet away.   It must be assumed that the jury had found those to be the facts or that there was a prospect of their so finding. They made the inquiry in order to ascertain how the ordinance was to be applied if such were the facts.   They asked but a single question, which showed that they desired information only on one point, namely, who had the right of way if they found the facts as stated in the question.   That inquiry was answered and the jury were warranted in inferring that it was intended to be answered by the first sentence in the court's written answer to the question, for therein the court said:  " Under the ordinance referred to in the charge the trolley car had the right of way over the automobile."   It may be that the learned court did not intend to instruct the jury as matter of law that on the state of facts assumed in the question the trolley car had the right of way, and merely intended to restate generally the effect of the ordinance; but bearing in mind the inquiry made by the jury and their purpose in so inquiring they would naturally, I think, infer that the court in the first sentence of the written answer intended to answer their question by stating that the trolley car on that state of facts had the right of way.   The court should have stated in answer to the question that it could not be said as matter of law which of the vehicles had the right of way and that it was a question for the jury depending upon how they found the facts with respect to the speed of the respective vehicles.   Any layman reading the written instructions sent to the jury in answer to their written request would have understood that the court first answered their request by stating that the trolley car had the right of way and that having the right of way it was the duty of the automobile to allow it to pass if in the opinion of the jury the trolley car was likely to reach the intersection at the time the automobile intended to cross and that an omission to do so might be regarded as a failure to exercise due care.   In other words, all that the court stated in writing in answer to the written inquiry made by the jury is consistent with an intention on the part of the court to instruct the jury first that the trolley car on that state of facts had the right of way but

notwithstanding it had the right of way they need not impute to the chauffeur contributory negligence in proceeding unless the trolley car was likely to reach the intersection at the time the automobile intended to cross. By these instructions the plaintiff was handicapped. The jury were required to proceed with the question of the chauffeur's contributory negligence in the light of the fact that he had failed to accord to the trolley car the right of way to which it was entitled under the ordinance.

It is quite clear, therefore, I think, that the jury were misled by the written instructions and that the exception thereto presents reversible error, and for that reason I am of opinion that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

DOWLING and PAGE, JJ., concurred; CLARKE, P. J., and SHEARN, J., dissented.

SHEARN, J. (dissenting):

This action was brought by the plaintiff as assignee of C. W. Cavanaugh, the owner of an automobile insured by the plaintiff, to recover damages resulting to the automobile as a result of a collision with one of defendant's cars, to which claim the plaintiff insurance company was subrogated.

The collision occurred at about midnight October 5, 1915, at the intersection of Forty-fifth street and Sixteenth avenue, Brooklyn. Forty-fifth street runs east and west and Sixteenth avenue runs north and south. The automobile was proceeding westerly on Forty-fifth street and the trolley car was proceeding northerly on Sixteenth avenue. According to plaintiff's witnesses, the automobile, which was being driven by Cavanaugh, slowed down to between six and ten miles an hour when one hundred feet from the crossing and approached the crossing slowly and under control. At this rate of speed the automobile could be stopped within five feet. Cavanaugh looked to the left as he approached the crossing but his view in the direction from which the car was approaching was cut off by a corner building until he was within twenty-five or thirty feet of the track, at which point he saw the car

approaching at a rapid rate of speed, distant from one-half to three-fourths of a block away. Concluding that he had time to cross, Cavanaugh proceeded, but the automobile was struck in the side near the driver's seat by the front of the car, throwing one of the passengers out and damaging the automobile. As the car approached, no warning by gong or otherwise was given of an intention to attempt to cross ahead of the automobile. According to defendant's witnesses, the automobile had a speed of over twenty-five miles an hour and the car was not traveling more than twelve to fifteen miles an hour. The automobile was first observed by the motorman when the car was thirty feet from the near corner of Forty-fifth street, when the motorman applied the emergency brake and stopped the car within fifty feet; further, the automobile went upon the track when the front of the car was only five feet away from it. While the jury might well have found the driver of the automobile guilty of contributory negligence upon his own testimony, the question was one of fact for the jury. A serious question is raised by an exception taken to the charge, dealing with the effect to be given to the city ordinance which provides that vehicles going in a northerly or southerly direction shall have the right of way over any vehicle going in an easterly or westerly direction. (See Code Ord. 1915, chap. 24, art. 2, § 15, subd. 1; Cosby's Code Ord. [Anno. 1915] p. 336.) The learned trial justice charged the jury: " The defendant has put in evidence a city ordinance, which you are bound to consider in determining whether or not Cavanaugh was guilty of contributory negligence. That ordinance provides, in substance, that vehicles going in a northerly or southerly direction shall have the right of way over those going in an easterly or westerly direction. In this instance the trolley car was going in a northerly direction, and, under that ordinance, had the right of way over the automobile. That meant that if they arrived together at the point where the highways upon which they were traveling met, it would be the duty of the operator of the automobile, Cavanaugh, to wait and give the trolley car an opportunity to pass, it having the right of way. You should take that into consideration in determining whether or not Cavanaugh

exercised that degree of care which an ordinarily prudent man would exercise under such circumstances."

No exception was taken to this charge, but plaintiff's counsel excepted to the court's refusal to charge "That if they find that the front of Cavanaugh's automobile was from 20 to 25 feet from the trolley car, at a time when the car approaching on the track was from half to three-quarters of a block away, that as matter of law the trolley car did not at that time have the right of way."

The record shows that after the jury retired, the court received the following message in writing from the jury: "Assuming the trolley car is 125 feet from the intersection and the automobile is 30 feet from the same intersection, who has the right of way?"

The court sent the following answer in writing after submitting the same to the respective counsel: "Under the ordinance referred to in the charge the trolley car had the right of way over the automobile. It was, therefore, the duty of the automobile to allow the trolley car an opportunity to pass if, in the opinion of the jury, the latter was likely to reach the crossing at the time the automobile intended to cross. The omission to do so may be regarded by the jury as a failure to exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. The respective distances, from the intersection of the streets, of the trolley car and of the automobile, as relating to the right to continue on their several courses, is a question of fact to be determined by the jury in the light of all the facts found by the jury to have been proven and the inferences to be drawn from such facts."

Plaintiff's counsel excepted to these additional instructions and requested the court to charge "That it was the duty of the trolley car to be under control approaching 45th Street, that it was the duty of the trolley car to avoid a collision and to allow the automobile to pass if the automobile would apparently reach the crossing at the time the trolley car would reach the said crossing, and that the distances mentioned in the communication sent in by the jury are such that the question of the right of way has not arisen." The court declined to charge except as already charged, and plaintiff excepted.

It is contended that the court's answer to the jury's inquiry was tantamount to an instruction that if the driver of the automobile, when 25 feet distant from the track, saw a car 125 feet on his left and approaching the crossing, it was the duty of the driver to stop and to allow the car to cross first. Such a charge would be erroneous (*Demarest* v. *Forty-second St., M. & St. N. Ave. R. Co.*, 104 App. Div. 503, 506), for it would not take into consideration the relative speed of the vehicles or the right of the driver of the automobile to assume that the motorman would have his car under reasonable control as he approached the crossing. While the opening sentence of the court's reply to the jury's inquiry is susceptible of the interpretation placed upon it by the appellant, in fairness to the court and to the litigants this one sentence should not be stripped from its context but should be interpreted in the light of the qualifying and explanatory statements immediately following it. The court correctly stated what this right of way, which it had just referred to, meant and what duty it imposed upon the driver of the automobile, saying: " It was, therefore, the duty of the automobile to allow the trolley car an opportunity to pass if, in the opinion of the jury, the latter was likely to reach the crossing at the time the automobile intended to cross." That this was correct is shown by the opinion of Mr. Justice Laughlin in *McCarragher* v. *Proal* (114 App. Div. 470, 477). In that case counsel for the defendant requested the court to charge: " I ask your Honor to charge the jury, in view of the charge just made, that the ordinance provides that if a vehicle in the city of New York is going north or south, and if another vehicle is going east or west, and they come near to each other at a street intersection, and there is any imminence of a collision, the vehicle east and west must wait and let the vehicle going north and south pass."

Mr. Justice Laughlin said: " If the bicycle and automobile were approaching the point at which their lines of travel would intersect substantially at the same time and so near that there was imminence of a collision, and it was not the duty of the bicycle rider to slow down and stop if necessary to avoid a collision, it is difficult to see the object of the ordinance and to know what would constitute a violation of

it. If the facts were as recited in the request to charge, I think the plaintiff in going ahead did not accord to the defendant the right of way, and if so, he was guilty of a violation of the ordinance and that should have been considered by the jury with the other evidence tending to show contributory negligence on his part."

As the court in effect said in the main charge, the ordinance does not attempt to fix the relative rights of vehicles that arrive at crossings at the same instant. The court said: "That meant that if they arrived together at the point where the highways upon which they were traveling met, it would be the duty of the operator of the automobile, Cavanaugh, to wait and give the trolley car an opportunity to pass, it having the right of way." Heavy and rapidly moving vehicles, arriving together at a point where highways meet are almost inevitably bound to collide. The object of the ordinance is to avoid such collisions. To do this, it is necessary to exact vigilance and fix the relative rights and obligations of the vehicles as they approach a common crossing. In these collisions at crossings, one of the common causes is uncertainty on the part of the driver of one vehicle as to what the other intends to do. The ordinance seeks to eliminate this uncertainty by establishing a rule for the management of vehicles approaching common crossings where, if neither vehicle altered its speed or course, a collision would be imminent. Accordingly, the ordinance has declared which vehicle must give way and slow down or stop when, in the exercise of reasonable care and foresight, it is apparent that a collision is likely to occur. This rule substitutes reasonable certainty for confusion and uncertainty and affords a guide to each driver as to what the other ought to do and, if law abiding, will do in such an emergency. The rule is not arbitrary and confers no absolute rights. It takes into account the exercise of reasonable judgment, the obligation of drivers of vehicles to have their vehicles under reasonable control at street crossings and the obligation to avoid inflicting injury upon another where it may be avoided in the exercise of reasonable care. At the same time, in the conflict that nearly always exists respecting the exercise of reasonable care, the rule as to the right of way affords a very persuasive

and satisfactory measure of responsibility for collisions at street crossings.

In the case at bar, while the significance of the ordinance as a measure of care might well have been more fully explained to the jury, there was no legal error in the charge as a whole, and, in view of the circumstances of this case, where the driver of the automobile was only going, according to his own testimony, at about six miles an hour and could have stopped within five feet, and yet deliberately proceeded slowly across the track in the face of a rapidly-moving trolley car, which was almost upon him by the time the front of the automobile went upon the track, the collision occurring before the automobile had proceeded more than six feet, the verdict of the jury should not be disturbed because of one sentence in the court's charge, disregarding the context.

The judgment and order should be affirmed, with costs.

CLARKE, P. J., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.